# United States Court of Appeals
# for the Federal Circuit

---

**LAURENCE CHITLIK,**
*Petitioner-Appellant*

**v.**

**SECRETARY OF HEALTH AND HUMAN
SERVICES,**
*Respondent-Appellee*

---

2025-1804

---

Appeal from the United States Court of Federal Claims
in No. 1:22-vv-01790-RAH, Judge Richard A. Hertling.

---

Decided:  August 10, 2026

---

GREG TINCH, Tinch Law Firm PC, College Park, MD,
argued for petitioner-appellant.

JAY TRAVIS WILLIAMSON, Torts Branch, Civil Division,
United States Department of Justice, Washington, DC, argued for respondent-appellee.  Also represented by LARA A.
ENGLUND, JONATHAN D. GUYNN, HEATHER LYNN
PEARLMAN, BRETT SHUMATE.

---

Before PROST, REYNA, and STARK, *Circuit Judges.*

PROST, *Circuit Judge*.

Laurence Chitlik, who was at the time proceeding pro se, mailed a petition for compensation under the National Vaccine Injury Compensation Program ("the Program") via certified first-class mail to the U.S. Court of Federal Claims ten days before the expiration of the statute of limitations. The petition was received and filed one day beyond the limitations period due to U.S. Postal Service ("USPS") delay, and Mr. Chitlik sought application of equitable tolling. The special master denied Mr. Chitlik's request, finding that he was not reasonably diligent in pursuing his claim and that the USPS delay was not an extraordinary circumstance that prevented timely filing. The Court of Federal Claims affirmed the special master's finding regarding a lack of reasonable diligence but did not address the issue of extraordinary circumstances. We reverse the finding that Mr. Chitlik failed to exercise reasonable diligence. We further vacate the special master's finding of no extraordinary circumstances and remand for further proceedings on that issue.

## BACKGROUND

The relevant facts of this case are undisputed. Mr. Chitlik alleges to have suffered an injury compensable under the Program on December 6, 2019. The statute of limitations for such a claim under the Program is 36 months from onset of the first symptom, 42 U.S.C. § 300aa-16, meaning that the latest date Mr. Chitlik could file a claim was December 6, 2022.

On November 26, 2022—ten days (eight business days[1]) before the expiration of the statute of limitations—Mr. Chitlik, then pro se, mailed a petition from his local

---

[1]    We use "business days" to refer to the USPS's days of operation, which generally span Monday through Saturday.

USPS office in Cambridge, Maryland, to the Court of Federal Claims via certified first-class mail. The approximate distance his petition needed to travel was eighty-five miles. USPS provided a five-business-day delivery commitment for its first-class mail service. For reasons unknown, Mr. Chitlik's petition did not arrive at the Court of Federal Claims until the morning after the statute of limitations expired. The petition was filed the same day.

After preliminary proceedings related to the timeliness of the petition, Mr. Chitlik, now represented by counsel, moved for application of equitable tolling, alleging that two extraordinary circumstances prevented timely filing: (1) "the USPS failing to meet its delivery commitment which resulted in a four . . . business day delay beyond the 1-5 business day delivery commitment"; and (2) "the global COVID-19 pandemic, which precipitated and/or exacerbated the USPS failure to meet its 1-5 business day delivery commitment." App'x 61, 64–68. Mr. Chitlik contended that he acted with reasonable diligence in pursuing his claim by mailing the petition a full eight business days before the expiration of the statute of limitations. App'x 61–64.

The special master denied the request, finding that Mr. Chitlik had not established either necessary prong to justify equitable tolling—i.e., that Mr. Chitlik was not reasonably diligent in pursing his claim and that no extraordinary circumstance caused the late filing. *Chitlik v. Sec'y of HHS*, No. 22-1790V, 2024 WL 5346731 (Fed. Cl. Spec. Mstr. Dec. 19, 2024) ("*Special Master's Decision*").

Mr. Chitlik objected to the special master's determination by filing a motion for review with the Court of Federal Claims. App'x 89–114. In that motion, Mr. Chitlik advanced the same arguments regarding his diligent mailing of the petition but offered two additional allegedly extraordinary circumstances: (1) that the Court of Federal Claims' "extraordinary rulemaking in view of the COVID-19 global health emergency is an extraordinary circumstance"; and

(2) that "[Mr. Chitlik's] intermittent mental incapacity while under general anesthesia is an extraordinary circumstance." App'x 108–12. In response, the government argued that these "extraordinary circumstances" were waived pursuant to Vaccine Rule 8(f), as Mr. Chitlik had not raised them before the special master. App'x 132–33.

The Court of Federal Claims affirmed the special master's finding that Mr. Chitlik was not reasonably diligent and, on that basis and without addressing extraordinary circumstances, affirmed the special master's decision and dismissed the petition. *Chitlik v. Sec'y of HHS*, No. 22-1790V, 2025 WL 947455 (Fed. Cl. Mar. 27, 2025) ("*Court of Federal Claims' Decision*"). Mr. Chitlik timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

"In Vaccine Act cases, we review a ruling by the Court of Federal Claims de novo, applying the same standard that it applies in reviewing the decision of the special master." *Moberly ex rel. Moberly v. Sec'y of HHS*, 592 F.3d 1315, 1321 (Fed. Cir. 2010). "We review factual findings under the arbitrary and capricious standard, and we review legal rulings to determine whether they are 'not in accordance with law.'" *Id.* (quoting *Munn v. Sec'y of HHS*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992)). Where "the material facts are not in dispute this court has treated the question of the availability of equitable tolling as a matter of law." *Dobyns v. United States*, 101 F.4th 839, 842 (Fed. Cir. 2024) (cleaned up).

A party seeking to invoke equitable tolling has the burden to prove both "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016). Mr. Chitlik contends that the special master erred

as a matter of law in concluding that he failed to satisfy either prong. We address each in turn.

## I

"The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Holland v. Florida*, 560 U.S. 631, 653 (2010) (cleaned up).

## A

The special master's analysis of the reasonable diligence prong was as follows:

> [Mr. Chitlik] could have avoided an untimely delivery of his petition by choosing overnight delivery or Priority Mail Express with a next-day to two-day delivery guarantee. I find no significance in the fact that [Mr. Chitlik]'s petition was one day late versus three or four days late. Choosing a guaranteed delivery service rather than a "commitment" standard a courier aspires to uphold would have guaranteed a timely delivery. [Mr. Chitlik] did not so choose.

*Special Master's Decision*, 2024 WL 5346731, at *5. Mr. Chitlik contends that the special master imposed a "de-facto overnight-delivery requirement" and improperly applied a standard of "maximum feasible diligence," not "reasonable diligence." Appellant's Br. 8, 13–20. The government argues that the special master adopted no such requirement and instead found Mr. Chitlik not reasonably diligent based upon an analysis of all the facts. The government further contends that, in any event, requiring use of an overnight-delivery service demands no more than reasonable diligence. Appellee's Br. 12–15. We agree with Mr. Chitlik.

1

First, contrary to the government's assertions, it is apparent that the special master failed to conduct a case-specific analysis of all the relevant facts. Instead, the special master appears to have adopted a bright-line rule whereby use of a non-"guaranteed" delivery method precludes a finding of reasonable diligence. That per se rule conflicts with the Supreme Court's instruction that equitable tolling must be determined "on a case-by-case basis." *Holland*, 560 U.S. at 649–51 (reversing per se rule barring application of equitable tolling and acknowledging "equity's resistance to rigid rules," as well as "the need for flexibility" and "for avoiding mechanical rules") (cleaned up). It also conflicts with this court's jurisprudence, which has decried the use of categorical bars to equitable tolling. For instance, in *James v. Wilkie*, we concluded that the Veterans Court erred when "it made a categorical determination that a fallen mailbox flag is not entitled to equitable tolling but is rather an ordinary hazard of last-minute mailing that could have been avoided but for [appellant]'s garden variety neglect." 917 F.3d 1368, 1373 (Fed. Cir. 2019) (cleaned up). As we explained in the context of extraordinary circumstances, and which is equally applicable here, equitable tolling "necessarily requires a case-by-case analysis and not a categorical determination." *Id.* Put another way, "[u]se of a categorical determination for an equitable tolling analysis finds no support in our precedent." *Id.* at 1375.

Here, the "reasonable diligence" prong required a case-by-case analysis, which should have considered, among other things, not only the choice of delivery method, but also the date the petition was mailed, the projected timeline for delivery (taking into account the distance the petition needed to travel), and the amount of time until expiration of the statute of limitations at mailing. *See K. G. v. Sec'y of HHS*, 951 F.3d 1374, 1382 (Fed. Cir. 2020) ("[T]he reasonable diligence inquiry must . . . be based on a

consideration of all relevant facts and circumstances."). The special master's statement "find[ing] no significance in the fact that [Mr. Chitlik]'s petition was one day late versus three or four days late" evinces the lack of an adequate case-specific analysis. *Special Master's Decision*, 2024 WL 5346731, at \*5. An appropriate analysis should have considered the significance to be afforded to Mr. Chitlik's mailing of the petition ten days before the deadline, the projected delivery date, and the protracted length of USPS delay, which together culminated in the petition arriving only a single day late. The special master's failure to consider all relevant facts and circumstances, such as these, was legal error.

2

Second, the special master further erred in imposing a standard higher than the requisite *reasonable* diligence by requiring selection of a "guaranteed" delivery service.[2] *Holland*, 560 U.S. at 653 ("The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." (cleaned up)). The rules in place at the time of filing required pro se petitioners to submit their petition "either through the U.S. Mail, or by deposit in the court's night box." General Order Suspending Paper

---

[2]   It is undisputed that such "guaranteed" delivery services only provide a *money-back* guarantee for late delivery, not a *delivery* guarantee. *See, e.g.*, Oral Arg. at 19:10–58, No. 25-1804, https://www.cafc.uscourts.gov/oral-arguments/25-1804_07062026.mp3 (counsel for the government conceding this point). Indeed, even the *Raspberry* and *Mojica* cases that the special master analyzed elsewhere in her decision (*see infra* § II) demonstrate that a "delivery guarantee" is a misnomer. *Special Master's Decision*, 2024 WL 5346731, at \*5 (discussing cases where petitioners utilized "guaranteed delivery" services and delivery was delayed).

Filing Requirement in Pro Se Cases at 2 (Fed. Cl. Mar. 18, 2020). Mr. Chitlik chose the former option and mailed his petition via certified first-class mail ten days (eight business days) prior to the expiration of the statute of limitations. To require the purchase of a "next-day to two-day delivery guarantee" ten days before the deadline demands from petitioners far more than *reasonable* diligence.

The government urges this court to follow other circuits that have found delays in "regular" mail insufficient to justify equitable tolling. Appellee's Br. 13–15 (citing *Robinson v. DHS*, 71 F.4th 51, 59 (D.C. Cir. 2023); *Sandvik v. United States*, 177 F.3d 1269, 1272 (11th Cir. 1999); *Talamantes-Penalver v. INS*, 51 F.3d 133, 136 (8th Cir. 1995)). We are unconvinced.

In *Robinson*, the appellant mailed the complaint via "standard mail" four days before the statutory deadline. *Robinson*, 71 F.4th at 58–59. The applicable district court rule, however, required pro se litigants to submit complaints "by sending the filing via email to the Court's email address" or "by date-stamping and depositing papers in drop boxes located at the entrance to the Courthouse." *Id.* (cleaned up). The D.C. Circuit faulted the appellant for failing to explain why he did not use one of the two authorized filing options or otherwise explain the untimely filing and, on those facts, found that equitable tolling did not apply. *Id.* at 59.

*Sandvik* and *Talamantes-Penalver*, both of which predate the Supreme Court's articulation of the reasonable diligence standard in *Holland*, are likewise distinguishable from the present case.

In *Sandvik*, the appellant's attorney mailed the petition in question from Atlanta to Miami (over 600 miles) five days before the expiration of the statute of limitations. *Sandvik*, 177 F.3d at 1270–71. The Eleventh Circuit declined to apply equitable tolling because "[appellant]'s counsel could have avoided [the untimely filing] by mailing

the motion earlier or by using a private delivery service or even a private courier." *Id.* at 1272.  In so reasoning, the Eleventh Circuit did not deny that using regular mail could be a reasonably diligent method if utilized early enough.

The same is true for *Talamantes-Penalver*, which did not address equitable tolling but instead resolved a due-process challenge to a statutory deadline for filing a notice of appeal.  *Talamantes-Penalver*, 51 F.3d at 134.  There, appellant's attorney mailed the petition only three days before the deadline.  *Id.*  While the Eighth Circuit recognized that the appellant had "assumed the risk of regular mail delivery," it also noted that the appellant could have mailed the petition earlier to "allow[] eight days for delivery by regular mail," *id.* at 136—an acknowledgement, akin to *Sandvik*, that using regular mail can be a reasonably diligent method depending on the circumstances.

In short, each of the government's cases from other circuits is factually distinct, and none set forth the rule that a finding of reasonable diligence is precluded in all instances where regular mail is used.  Nor would such a rule be appropriate in view of *Holland*'s requirement to perform a case-by-case analysis and its instruction that only "reasonable diligence, not maximum feasible diligence," is required.  *Holland*, 560 U.S. at 653 (cleaned up).  Therefore, we conclude that the special master's imposition of a "guaranteed"-delivery requirement demands more than reasonable diligence and is not in accordance with law.

## B

The Court of Federal Claims failed to address the special master's errors discussed above and instead offered an additional justification for finding that Mr. Chitlik was not reasonably diligent.  We are unpersuaded.

Specifically, the Court of Federal Claims faulted Mr. Chitlik for "failing to monitor the status of the delivery of his petition through the tracking option for which he had

paid and failing to respond to the apparent delay in the delivery during the Postal Service's peak mailing season." *Court of Federal Claims' Decision*, 2025 WL 947455, at \*6. In the court's view, a reasonably diligent person "would have tracked his envelope and observed that there was no record of its delivery as the deadline for filing the petition grew ever closer," and, "[u]pon realizing that the envelope with the petition would apparently fail to arrive by the deadline, a reasonably diligent person would have re-sent the petition by guaranteed overnight delivery." *Id.* at \*5. Based on this reasoning, the court determined that Mr. Chitlik had failed to exercise reasonable diligence.

The Court of Federal Claims, like the special master, demanded an impermissibly heightened level of diligence. Given the short distance (around eighty-five miles) that Mr. Chitlik's petition needed to travel, a reasonably diligent person in his position could have well expected the petition to arrive and be filed by the deadline—even if the tracking information leading up to the deadline had not yet confirmed delivery. To require a petitioner to parse the tracking information and mail additional parallel petitions *before any meaningful indication that the original petition would be untimely* demands more than a "reasonable" level of diligence. Additionally, as discussed above (*supra* note 2), there is no actual guarantee that any subsequent petition mailed via a "guaranteed" overnight delivery would itself arrive in time.[3]

---

[3]    We do not suggest that a failure to inquire as to the status of a mailing will never be relevant. For example, had Mr. Chitlik's petition failed to arrive for multiple days after the statute of limitations expired and had he taken no action during that time, then the Court of Federal Claims' reasoning may very well support a lack of reasonable diligence. Those, however, are not the present facts. Nor, we

For the foregoing reasons, we reject the Court of Federal Claims' tracking requirement in this case as an improper heightening of the "reasonable diligence" standard.

C

Having determined that the underlying decisions were not in accordance with law, we next assess whether, on these undisputed facts, Mr. Chitlik was reasonably diligent in pursuing his claim. *See Dobyns*, 101 F.4th at 842 ("[W]hen the material facts are not in dispute this court has treated the question of the availability of equitable tolling as a matter of law." (cleaned up)). We conclude he was.

Mr. Chitlik mailed his petition roughly eighty-five miles from Maryland to Washington, D.C., via USPS first-class mail ten days (eight business days) before the statute of limitations expired. With USPS's five-day nationwide delivery commitment, as well as the short distance his petition needed to travel, Mr. Chitlik can hardly be faulted for reasonably expecting that his choice of delivery method would suffice. Indeed, by mailing his petition ten days before the deadline, Mr. Chitlik ensured that he could withstand even three days of delay past the end of the USPS's delivery commitment—a far cry from the appellants in *Talamantes-Penalver* (mailing three calendar days before deadline), *Robinson* (four days before), and *Sandvik* (five days before). While a failure to monitor or act upon tracking information may counsel against reasonable diligence in other circumstances, it has no bearing here where

---

stress, do we adopt a threshold requirement that petitioners in all cases must obtain tracking information to be considered reasonably diligent. Imposition of such a categorical prerequisite would be difficult to square not only with *Holland* but also the Court of Federal Claims' own rules that allow submission through the U.S. Mail without further restrictions—tracking-related or otherwise.

Mr. Chitlik's petition arrived the morning after the statute of limitations expired (and, as discussed above, there was no meaningful indication beforehand that it would not timely arrive). At that point, there was nothing more for Mr. Chitlik to do other than to seek tolling of the deadline that passed, which he did. To require more on these undisputed facts would be error.

Accordingly, we reverse the finding that Mr. Chitlik was not reasonably diligent in pursuing his claim.

## II

Having found that Mr. Chitlik was reasonably diligent, we turn next to the question of extraordinary circumstances.

"[T]he second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Menominee*, 577 U.S. at 257 (emphasis in original). An extraordinary circumstance serving as the basis for equitable tolling "necessarily carries with it an element of causation." *Aldridge v. McDonald*, 837 F.3d 1261, 1265 (Fed. Cir. 2016).

The special master's analysis of the extraordinary circumstances prong was as follows:

> [A] delay in regular mail is not an extraordinary circumstance, and [Mr. Chitlik] acknowledged in his filings that regular mail delays are common. . . . This case is different than *Raspberry* and *Mojica* because those petitioners chose overnight delivery (a reliable method of securing a timely delivery) whereas [Mr. Chitlik] assumed the risk of regular mail delivery services. . . . Further, [Mr. Chitlik] has not provided sufficient evidence that the COVID-19 pandemic substantially affected the mail to cause an extraordinary circumstance.

*Special Master's Decision*, 2024 WL 5346731, at \*5.[4]  The Court of Federal Claims did not reach the extraordinary circumstances prong, having affirmed the special master's finding of no reasonable diligence. *Court of Federal Claims' Decision*, 2025 WL 947455, at \*6 n.5.  On appeal, Mr. Chitlik contends, in part, that the special master erred in her determination that "USPS's failure to meet its delivery commitment despite [Mr. Chitlik]'s timely submission" could not constitute an extraordinary circumstance.  Appellant's Br. 10.[5]  We agree with Mr. Chitlik that, under the totality of circumstances, USPS's delayed delivery of his petition could be found to constitute an extraordinary circumstance.

With respect to "extraordinary circumstances," the special master again applied a categorical rule—namely, that "a delay in regular mail is not an extraordinary circumstance," *Special Master's Decision*, 2024 WL 5346731, at \*5—in contravention of precedent requiring a case-by-case determination, *Holland*, 560 U.S. at 649–51; *James*,

---

[4]    *See Raspberry v. Sec'y of HHS*, 32 Fed. Cl. 777, 782 (1995) (applying equitable tolling); *Mojica v. Sec'y of HHS*, 102 Fed. Cl. 96, 100 (2011) (same).

[5]    On appeal, Mr. Chitlik devotes most of his argument on this prong to two additional allegedly extraordinary circumstances—namely, (1) "the [Court of Federal Claims'] COVID-19 emergency orders limiting filing options to mail delivery for 33 of the 36 months in his filing window" and (2) "Petitioner's documented periods of incapacity during surgical interventions for life-threatening conditions."  Appellant's Br. 10, 21–27.  The government contends that Mr. Chitlik waived these arguments under Vaccine Rule 8(f).  Appellee's Br. 22.  These same arguments were raised to the Court of Federal Claims.  App'x 108–12.  We leave the issue of waiver for the Court of Federal Claims on remand.

917 F.3d at 1373–75.  As just discussed, that is error.  Accordingly, we vacate the special master's finding of no extraordinary circumstance.

### CONCLUSION

We reverse the determination that Mr. Chitlik was not reasonably diligent in pursuing his claim, vacate the special master's determination regarding no extraordinary circumstance, and remand to the Court of Federal Claims to assess extraordinary circumstances in the first instance under the correct legal standard articulated herein and for other proceedings not inconsistent with this opinion.[6]  In doing so, the Court of Federal Claims should consider (1) whether any of Mr. Chitlik's extraordinary circumstance arguments were waived and (2) whether any non-waived extraordinary circumstance arguments, taken alone or in combination, constitute an extraordinary circumstance that justifies equitable tolling.

### REVERSED-IN-PART, VACATED-IN-PART, AND REMANDED

### COSTS

Costs to Mr. Chitlik.

---

[6]    *See Capizzano v. Sec'y of HHS*, 440 F.3d 1317, 1328 (Fed. Cir. 2006) (remanding to the Court of Federal Claims to determine whether petitioner had proven causation based on the existing factual record); *Althen v. Sec'y of HHS*, 418 F.3d 1274, 1281 (Fed. Cir. 2005) ("[B]ecause the special master's decision was not in accordance with law, the trial court [is] permitted to review the evidence anew and come to its own conclusion." (citing 42 U.S.C. § 300aa-12(e)(2)(B))).  We leave it to the Court of Federal Claims, after receiving the views of the parties, to decide whether the matter should be decided by the special master.  *See* 42 U.S.C. § 300aa-12(e)(2).